632 A.2d 1065

**CITY OF CONNELLSVILLE**

v.

**FAYETTE COUNTY TAX CLAIM BUREAU,**
**County of Fayette, and Fayette County**
**Board of Assessment, Appellants.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1993.

Decided Oct. 21, 1993.

Robert L. Webster, Jr., for appellants.

Michael J. Macko, for appellee.

Before COLINS, J., KELLEY, J. (P.), and LORD, Senior Judge.

COLINS, Judge.

This is an appeal brought by the Fayette County Tax Claim Bureau (Bureau), County of Fayette (County) and Fayette County Board of Assessment (Board) (collectively appellants) from an order of the Court of Common Pleas of Fayette County (Common Pleas) that granted a petition filed by the appellee, City of Connellsville (City), to remove the Connellsville Community Center (Center) from a tax claim sale and from the County tax assessment rolls.

The City owns the Center which, from 1983 until 1988 was tax exempt. On November 24, 1987, the City received notice that the Center's assessment status had been changed from exempt to taxable. Subsequently, the Center was scheduled to be sold at a tax claim sale, because the taxes owing had not been paid. On or about September 27, 1991, the City filed a petition to remove property from tax claim sale in Common Pleas.

Appellants challenged the jurisdiction of Common Pleas over the foregoing matter, alleging that Section 704 of The Fourth to Eighth Class County Assessment Law (Assessment Law), Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. § 5453.704, requires assessment appeals to be presented initially to the Board rather than to Common Pleas.[1] The City maintained that Common Pleas properly had jurisdiction to decide this matter because: (1) the Board had authority to change the Center's tax status only during the period between July 1 and July 15 and (2) the Board failed to comply with notice requirements found in Section 701(a)[2] and Section

---

1. Section 704(a) of the Assessment Law, 72 P.S. § 5453.704(a), provides as follows:

   (a) Any person who shall have appealed to the board for relief from any assessment, who may feel aggrieved by the order of the board in relation to such assessment, may appeal from the order of the board to the court and thereupon the court shall proceed at the earliest convenient time to be by them appointed, of which notice shall be given to the board to hear the said appeal and the proofs in the case, and to make such orders and decrees determining from the evidence submitted at the hearing.

2. Section 701(a) of the Assessment Law, 72 P.S. § 5453.701(a) provides, in pertinent part, as follows:

   The board shall, on or before the fifteenth day of July prepare an assessment roll or list of persons and property subject to local taxation, together with the value placed upon each person and each parcel or tract of real property. The board shall at the same time prepare a list of all property exempted by law from taxation. It shall cause to be mailed or delivered to each owner of property or person assessed, and taxing district having an interest therein, the actual value of whose property or personal assessment has been changed from that fixed in the preceding assessment roll as corrected after revision or the value of whose property or personal assessment has not theretofore been separately fixed, or when the established predetermined ratio has been changed within the county, at his last known

701(a.1)[3] of the Assessment Law.

After a hearing, Common Pleas rendered a decision and order on October 14, 1992 rejecting the City's first argument but finding that appellants failed to produce any evidence establishing that the notice of change in the Center's assessment status was mailed within five days of the date the change was made, in violation of the Assessment Law's mandatory notice provisions. Common Pleas found the foregoing failure to be a "fatal defect," rendering the purported change in the Center's tax assessment status void *ab initio* and, thereby, causing subject matter jurisdiction to vest in Common Pleas. Subsequently, Common Pleas granted the City's petition to remove the center from tax claim sale as well as from the County tax assessment rolls.

The issues before this Court are: (1) whether Common Pleas erred in finding appellants' non-compliance with the statutory notice provisions so fatal a defect as to cause subject matter jurisdiction to vest in Common Pleas rather than the Board and (2) whether Common Pleas abused its discretion in granting the City's petition to remove the center from tax claim sale, and in removing the property from the tax assessment rolls. "This Court's scope of review in a tax assessment case is limited to a determination of whether the trial court committed an error of law or abused its discretion." *Timber Trails v. County of Monroe*, 150 Pa.Commonwealth Ct. 29, 32 n. 1, 614 A.2d 342, 343 n. 1 (1992).

address, a notice of such change, the amount of the present assessment, valuation and ratio ... and the amount of such new assessment, valuation and ratio. Said notice shall be mailed within five days from the date the board made such change or added said property to the roll....

3. Section 701(a.1) of the Assessment Law, 72 P.S. § 5453.701(a.1), provides as follows:

The board is authorized to make additions and revisions to the assessment roll of persons and property subject to local taxation at any time in the year, so long as the notice provisions of this section are complied with. All additions and revisions shall be a supplement to the assessment roll for levy and collection of taxes for the tax year for which the assessment roll was originally prepared, in addition to being added to the assessment roll for the following calendar or fiscal tax years.

Appellants first argue that Common Pleas erred in assuming subject matter jurisdiction over the City's petition to remove the center from tax claim sale because: (1) the City never appealed the Center's tax status for 1988 and 1989 to the Board; and (2) although the City did appeal the Center's tax status for 1990 and 1991 to the Board, the City never subsequently appealed to Common Pleas from the Board's determination that the Center was not tax exempt for these years. Appellants thus contend that the City's failure to comply with statutorily mandated appeal procedures for disputing the change in the Center's tax status preclude the City from now collaterally attacking the change before Common Pleas.

After a hearing where all parties had an equal opportunity to present evidence, Common Pleas found that appellants failed to establish compliance with the aforementioned notice provision which, the Court held, should be construed as strictly with respect to the Board as it is for the individual taxpayer. Common Pleas based its decision on 72 P.S. § 5453.701(a.1), believing that the Board's authority to make revisions to the assessment roll is conditioned upon compliance with the mandatory notice provisions of this Section. Common Pleas opined:

> Having concluded that the notice provisions are mandatory as to the Board, it was incumbent upon the Board, to support its position, to show that it had complied with those provisions, and that its notice of change in status was mailed within five days of the date that the change was made. However, the Board did not establish this fact either through testimony developed at the hearing held on this matter, or through the introduction of the notice which was mailed to the City. Therefore, since the mandatory notice provisions of Section 5453.701(a) were not complied with by the Board, the change in status was void, *ab initio*.

Upon review, we find that Common Pleas did not abuse its discretion either in assuming jurisdiction of this matter or in its ultimate decision, which is amply supported by evidence of record, such as the following cross-examination testimony of

James A. Hercik, Chief Assessor and Director of Assessments for the County, at the May 18, 1992 Common Pleas hearing:

Q. Is it true that the tax status of this property was exempt through the year 1987?

A. That is correct.

Q. And that was based on the ownership by the Connellsville Area School District?

A. I believe so.

Q. Is it also true that the first year that the property appeared on the taxable roles was 1988?

A. That is correct.

Q. What is the procedure for changing a property from exempt to taxable?

A. The procedure our office follows is a review of the property to warrant its exempt status depending on the use. We review court cases, Purdon's statutes to determine whether or not the property is being properly utilized to warrant exempt status. In the cases where we uncover a property which we feel that there is a question or whether we feel it does not meet the exempt status, we notify the reported owner, via the U.S. Postal Service, of the change of assessment. We mail him a notice, I believe it is delivered first-class mail.

Q. On what date did you cause to deliver such a notice to the City of Connellsville or the Connellsville Community Center?

A. The notice was dated November 24, 1987, and it was mailed to the City of Connellsville as legal owner.

Q. At what time was the decision made to convert this property from tax exempt list to the tax list?

A. During the mid–1980's, the Fayette County Board of Assessment was reviewing all exempt properties within the County. We had been apprised of several court cases, specifically citing the hospital utilization project which set forth a five point test for what we felt applied to exempt properties within our county.

Q. With regard to this specific property, what date in 1987 was the decision made by the Fayette County Assessment Office and the Fayette County Board of Assessments to convert the status of the Connellsville Community Center property from exempt to taxable?

A. I would say the final date would have been the date of mailing, November 24. It had been discussed at previous meetings, however, I would say the final decision would have been the date of mailing.

Q. Did the change from tax exempt to taxable appear on your preparation of the assessment rolls due on July 1, 1987, under the statute?

A. No, it would not have.

Q. And when the Board of Assessment was to review and finalize the assessment roll for 1987, on or before July 15, 1987, was the conversion from exempt to taxable on that list?

A. Not on the July list, no.

Q. Does that section not provide that when changing a tax status from exempt to taxable that it be included in the assessment roll and approved by the Board within that fifteen day period?

A. I believe there is another section within Purdons, I believe 5453.701(a)(1), it permits the Board to make changes in evaluation. . . .

. . . .

Q. . . . As of 1987, the property was not subject to taxation. Correct?

A. That is correct.

. . . .

Q. Does your file reflect any formal notification from the Assessment Office, by way of the Chief Assessor of the Board of Assessments, to add this property to the taxable rolls within the period from July 1 through July 15, 1987?

A. Not in writing. I do know there were formal discussions and meetings held between the then Board of Assessment and the prior Chief Assessor, as far as what types of properties would be reviewed or which properties would be reviewed. However, there is not anything in writing in this file.

. . . .

Q. So the only written notice that was given would have been the November 24, 1987 notice?

A. Given to ...?

Q. To anyone.

A. Notice would have been given to the City of Connellsville as the owner of the property. Notice would have been given to the Connellsville Area School District as the taxing body and the County of Fayette as the taxing body.

Q. What date do your records reflect that the decision was made by the Board of Assessment approving the change from exempt to taxable?

A. That would have been November 24, the day it was caused, notice was mailed.

Q. Notice was not given to the Board until after the change in December.

A. Written notice was given to them, final written notice stating that the change had been made. Prior to that, as I had stated, it would have been a verbal review.

. . . .

Q. And that change of status is not reflected in the July 1 or July 15 report from your office or the accrued assessment roll approved by the Fayette County Board of Assessment on or about July 15, 1987?

A. That's correct. It was still exempt at that point in time.

. . . .

Q. And it retained its exempt status through the 23rd day of November, 1987?

A. That is correct.

Clearly, the above testimony substantiates Common Pleas' finding that appellants failed to comply with the Section 5453.701(a.1) mandatory notice provision applicable to changes in tax status, which failure, along with appellants' listing the Center for tax sale, constituted, as Common Pleas aptly categorized it, a "fatal defect." The importance of proper notice in cases of potential tax sale is well-established, and in *Rinier v. Tax Claim Bureau*, 146 Pa.Commonwealth Ct. 568, 581, 606 A.2d 635, 642 (1992), this Court stated:

> In tax sale matters, the Court has repeatedly held that notice provisions are to be strictly construed, and that strict compliance with such provisions is necessary to guard against deprivation of property without due process of law. Ali, 124 Pa.Commonwealth Ct. at 562, 557 A.2d at 37. Common pleas' decision herein reflects this philosophy, along with recognition that Section 602 of the Tax Law sets forth three types of notice, publication, certified mail and posting, all of which are required for a valid tax sale, and that if any one is defective, the sale is void.

Although *Rinier* and a vast majority of other tax sale appeals involved individual taxpayers, whereas, the present case involves a formerly exempt municipal community center, appellants are not relieved of their duty to comply with notice requirements prior to effectuating a change in an entity's tax status and prior to listing it for tax sale. Moreover, this Court has repeatedly held that "[i]n a tax sale case, the burden of proving compliance with statutory notice provisions ... lies with the Bureau." *Id.* at 579, 606 A.2d at 640. It is this burden which, in Common Pleas' judgment, appellants failed to meet. We agree, based on the foregoing discussion and, therefore, affirm the order of Common Pleas.

## ORDER

AND NOW, this 21st day of October, 1993, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby affirmed.

KELLEY, Judge, concurring.

I agree with the result but not the reasoning of the majority.

Given existing constitutional and statutory language the Connellsville Community Center is not subject to the imposition of Real Estate property taxation by the County. Pa. Const. art. VIII, § 2(a)(iii) and 72 P.S. § 5020–204(7).

The majority and trial court set forth in their opinions that the City of Connellsville must necessarily challenge the assessment under 72 P.S. § 5453.704. I find this action tantamount to validating of an assessment, when the taxation itself is invalid.

I find it absurd that one governmental institution would tax another. As Chief Justice Lowrie found in *Directors of the Poor of Schuylkill County v. School Directors of North Manheim Township*, 42 Pa. 21 (1862):

> If we require the townships, counties, towns, cities, and state, and the road, school, and poor authorities, to tax each other, we shall furnish fees enough for several hundred officers engaged in transferring from one public body to another the taxes which it has collected for its public purposes. These poor taxes must be collected to support the school and roads, and school taxes to support the poor, and so all around. Surely it is not too much to say this is absurd. The public is never subject to tax laws, and no portion of it can be without express statute. No exemption law is needed for any public property, held as such.

42 Pa. at 25.

In *Southwest Delaware County Municipal Authority v. Aston Township*, 413 Pa. 526, 198 A.2d 867 (1964), our Supreme Court noted that property owned by a municipality and

devoted exclusively to public purposes is immune from any form of taxation or assessments unless a statute clearly and unequivocally expresses the legislative will that such property shall not be immune. My review of the record in this case reveals no evidence of such legislative intent existing in the present matter.

The case law on this subject is clear. There must be a specific statute to tax. The language of the cases goes to the idea that one governmental institution cannot tax the other. It is well settled that in the absence of a statute to the contrary, public property used for public purposes is exempt from taxation and from assessments for improvements and no express exemption law is needed. *See County of Erie v. City of Erie,* 113 Pa. 360, 6 A. 136 (1886).

I would find that since the tax is void, the underlying assessment is void *ab initio.* The trial court did have proper jurisdiction in this matter, notwithstanding any purported failing to attack the assessment.