Re Appeal of Timothy and Laurie SUL-LIVAN From the Decision of the Board of Assessment Appeals of Delaware County, Pennsylvania for the Year 2007 and subsequent Tax Years Relating to the Property Located at 65 Farrier Lane, Newtown Township, Delaware County, Pennsylvania, Folio No. 30–00–00090–40.

Appeal of: Timothy and
Laurie Sullivan.

Commonwealth Court of Pennsylvania.

Argued May 9, 2011.
Decided Jan. 11, 2012.
Reargument Denied March 22, 2012.

Joseph P. O'Brien, Media, for appellants.

Mark A. Sereni, Media, for appellee Marple Newtown School District.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge [1], and McCULLOUGH, Judge.

---

1. The decision in this case was reached prior to January 7, 2012, when Judge Pellegrini became President Judge.

OPINION BY Judge McCULLOUGH.

Timothy and Laurie Sullivan appeal from the September 9, 2010, order of the Court of Common Pleas of Delaware County (trial court), which rejected their constitutional uniformity challenge and assessed their property in accordance with the common level ratio (CLR) established by the State Tax Equalization Board (STEB).

The Sullivans own residential real estate located at 65 Farrier Lane in Newtown Township, Delaware County, Pennsylvania. The property is within the Marple–Newtown School District. The Sullivans purchased the property in October 2004 for $1,530,807. At the time of purchase, the property was new construction and was assessed as a building lot at $307,250. However, on January 4, 2005, the Delaware County Board of Assessment Appeals (Board) sent the Sullivans an interim assessment notice, informing them that the land and building were now assessed at $1,432,010, effective January 1, 2005. The Sullivans did not appeal the 2005 interim assessment to the Board.

However, the Sullivans subsequently filed an appeal with the Board on July 31, 2006, pertaining to the 2007 annual assessment. The Board denied the appeal and concluded that the assessment would remain at $1,432,010. (Reproduced Record (R.R.) at 11.) Thereafter, the Sullivans appealed to the trial court, arguing that: (1) the ratio of assessment and the base year value used for taxing the property violates state and federal constitutional requirements for uniformity, equal protection, and due process; and (2) the Board's determination of market value is erroneous. (R.R. at 7–9.)

The trial court conducted a five day trial. The parties entered into the following stipulations: (1) the property's current assessment is $1,432,010; (2) the fair market value for 2007 and 2008 was $1,750,000; and (3) the fair market value for the years 2008 and 2009 was between $1,750,000 and $1,850,000, to be determined by the trial court based on appraisal evidence. They also stipulated to the following applicable CLR ratios calculated by STEB: for tax year 2007, 64.7 %; for tax year 2008, 61.1 %; and for tax year 2009, 58.3%. The trial court took judicial notice that the CLR for tax year 2010 is 61.3%.

The Sullivans presented the testimony of Paul Disciascio, a real estate appraiser, who was offered as an expert on "the statistical data of real estate transaction[s] in Delaware County." (R.R. at 700.) Based on court records, Disciascio developed data compilations for specific municipalities and transactions in Delaware County and determined the ratio of assessment to sale as reflected in the following exhibits:

Exhibit P–2, (R.R. at 188–92), representing, with certain exclusions, each transaction involving the sale of residential properties for a price of $1,000,000 or more in Newtown Township for the years 2005–2008. The ratios were 41.8% for 2005, 48.0% for 2006, 53.9% for 2007, and 54.3% for 2008.

Exhibit P–3, (R.R. at 193–205), representing, with certain exclusions, all arm's-length transactions involving detached, single-family residential properties, regardless of price, in Newtown Township for the years 2005–2008. The ratios were 52.5% for 2005, 54.2% for 2006, 54.1% for 2007, and 54.8% for 2008.

Exhibit P–4, (R.R. at 206–39), representing, with certain exclusions, all transactions in the Marple–Newtown School District for the years 2005–2008. The ratios were 53.8% for 2005, 48.5% for 2006, 54.1% for 2007, and 52.6% for 2008.

Exhibit P–5, (R.R. at 240–67), representing, with certain exclusions, all transaction involving the sale of detached single family residential properties in Marple Township and Newtown Township for the years 2005–2008. The ratios were 53.4% for 2005, 52.9% for 2006, 52.9% for 2007, and 54.2% for 2008.

The Marple–Newtown School District (District) presented the testimony of Pia DiGirolamo, Ph.D., who testified as an expert on economics and statistics.[2] Dr. DiGirolamo opined that the methodology utilized by Disciascio was flawed, primarily because the statistical samples were too small. She stated that a sample of a few data points, such as the three transactions in 2005 reflected in Exhibit P–2, is "definitely insufficient" data upon which to base a conclusive opinion. (R.R. at 878–79.) Dr. DiGirolamo explained that, regardless of size, a mere average, weighted or unweighted, is not necessarily representative of a group, so that inferences should not be made from an average alone. (R.R. at 878–92.)

The District also offered the testimony and the January 7, 2010, report of David Adams, another expert on economics and statistics. During his testimony Adams criticized Disciascio's methodology, noting that it did not make use of appraisals for any of the properties. (R.R. at 972–73) Adams also identified numerous data errors in Disciascio's compilations. (R.R. at 951–55.) In his report, Adams described Disciascio's calculations as revealing "a lack of statistical rigor." (R.R. at 36b.)

In addition, the District offered the testimony of John J. Coyle, III, and John Van Zelst. The Sullivans stipulated to Coyle's qualifications as an expert in the field of real estate appraising, and Coyle testified concerning *Standard on Ratio Studies*, the authoritative study promulgated and published in July 2000 by the International Association of Assessing Officers. Van Zelst, Chief Assessor for the County of Delaware's Assessment Office and a state certified evaluator, explained his office's practices with regard to the use of STEB codes, including "reject codes," and reporting to STEB.

On rebuttal, the Sullivans' presented additional studies, (Exhibit P–101), wherein Disciascio calculated ratios for Marple Township using the same criteria as used by STEB. (R.R. at 313–26.) The Sullivans asserted that all of the ratio studies show a lower level of assessment than the CLR. The Sullivans also presented rebuttal testimony of Donald J. Weiss, Esquire, who was offered as an expert on statistics and assessment matters. Weiss stated that Coyle's testimony was correct. (R.R. at 1112.) However, Weiss challenged STEB's "reject codes," which exclude certain property transfers from the analysis, asserting that STEB has no basis for using these codes.

After review, the trial court concluded that the Sullivans' property had a fair market value of $1,700,000. The trial court then calculated the assessment for the years 2007—2010 by applying the applicable STEB CLR. Applying the CLR, the trial court reduced the Sullivans' assessment for each tax year by a significant amount, resulting in the following figures: for 2007—$1,099,900; for 2008—$1,038,700; for 2009—$991,000; and for 2010—$1,042,100. The Court also stated as follows:

> The Sullivans argue that the assessment should not be determined by the CLR multiplied by the fair market value, but rather by the ratio of assessment of

2. Dr. DiGirolamo stated that she has a Master's in Public Administration and Finance, a Master's of Science in Economics, and a Ph. D., a Philosophical Doctorate in Economics. (R.R. at 863a.)

similar properties of the same nature in the neighborhood. The Sullivans believe that the Supreme Court authorized this methodology in the case of *Downingtown School District v. Chester County Board of Assessment Appeals* [590 Pa. 459], 913 A.2d 194 (Pa.2006).

In *Downingtown, supra,* the Supreme Court reversed and remanded the case to the trial court for consideration of the adequacy of the owner's uniformity challenge under *Deitch Co. v. Bd. of Property Assessment* [417 Pa. 213], 209 A.2d 397 (Pa.1965) and its progeny.

In *Deitch, supra,* the court stated that "we reiterate that the taxing district involved is Allegheny County." Similarly, in *McKnight Shopping Center Inc. v. Bd. Of Property Assessment* [417 Pa. 234], 209 A.2d 389 (Pa.1965) the scope of inquiry [regarding] reassessment to value ratio uniformity was the county. The same was held in *Appeal of F.W. Woolworth Co.* [426 Pa. 583], 235 A.2d 793 (Pa.1967).

Therefore, this court believes that in limiting their data to geographic areas within the county and specific transactions within the county rather than using countywide data as STEB does in compiling the CLR the Sullivans' analysis is flawed. Their expert, Paul Disciascio, presented ratios of transactions within the township, ratios of transactions within the school district, and ratios of transactions with sales prices of at least $1,000,000. **The Sullivans presented no county wide analysis. For this reason alone, the court does not accept the Sullivans' analysis.**

However, even if the methodology were not flawed, problems persist. The Marple–Newtown School District presented experts in the fields of economics and statistics, Dr. Pia DiGirolamo and David Adams. Dr. DiGirolamo opined that the analysis performed by and testified to by Mr. Disciascio was both conceptually incomplete and inconclusive. Mr. Adams testified as to numerous problems with Mr. Disciascio's analysis. **The Court found the testimony of Dr. DiGirolamo and Mr. Adams compelling.** It was for these reasons that the court did not accept the Sullivans' position and applied the STEB CLR to the fair market value.

(R.R. at 641–43) (emphasis added).

On appeal to this Court, the Sullivans first contend that they met their burden of proof set forth in *Downingtown School District v. Chester County Board of Assessment Appeals,* 590 Pa. 459, 913 A.2d 194 (2006), to establish a lack of uniformity of assessment. Specifically, the Sullivans maintain that they produced competent, credible, and relevant evidence in the form of ratio studies of assessment to sales of similar properties in the same neighborhood to establish a uniformity challenge under *Downingtown.* The Sullivans argue that they are entitled to be taxed uniformly with similar properties of the same nature in the neighborhood.

The District responds that the trial court correctly rejected the Sullivans' argument, because their evidence was flawed and because the CLR is the standard by which an assessment is measured for uniformity purposes. Ridley School District, as amicus curiae, argues that, under *Downingtown,* the trial court was free to reject the testimony of the Sullivans' experts and that the Sullivans are only entitled to have their assessment determined by application of the CLR.

Art. 8, § 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pennsylvania courts have interpreted the

uniformity requirement as "the principle that a taxpayer should pay no more or no less than his proportionate share of the cost of government." *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 220, 209 A.2d 397, 401 (1965). As we observed in *Smith v. Carbon County Board of Assessment Appeals,* 10 A.3d 393 (Pa.Cmwlth.2010):

> [A]ll real estate is a constitutionally designated class entitled to uniform treatment and the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction. As is often noted in cases addressing a uniformity challenge, "[t]axation ... is not a matter of exact science; hence absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." Practical inequities can be anticipated, and as long as the taxing method does not impose substantially unequal tax burdens, "rough uniformity with a limited amount of variation is permitted." A taxpayer will be entitled to relief under the Uniformity Clause if he demonstrates that his property "is assessed at a higher percentage of fair market value than other properties throughout the taxing district."

*Id.* at 399 (citations omitted).

In *Downingtown* our Supreme Court held that tax assessments could be challenged based on the lack of uniformity in the assessment of properties having like characteristics and qualities in the same area. In reaching this conclusion, the court stated that a taxpayer may prove a lack of uniformity by presenting evidence of the assessment-to-value ratios of similar properties of the same nature in the neighborhood. We recently explained *Downingtown* and other relevant cases in *Smith:*

Here, Smith put on credited evidence demonstrating that many similarly situated properties in the same development complex were taxed at a lower rate of current market value than his property. Based upon the principles discussed in *Downingtown,* such evidence remains relevant to a uniformity analysis and is properly considered. However, the evidence also showed that some comparable properties in the development were taxed at a higher percentage of market value. In addition, the comparables on which common pleas relied—admittedly a significant number of units in the development—were taxed at a substantially lower rate than the average in the taxing district.

That evidence alone, however, was insufficient to demonstrate that Smith was entitled to any further relief. While the Supreme Court's decision in *Downingtown* establishes that such evidence is relevant, nothing in its opinion suggests any departure from the established principle that the remedy for a lack of uniformity is a reduction in the assessment to conform to the common level prevailing in the tax district, such that this taxpayer pays no more and no less than his fair share.

Indeed, our Supreme Court's recent decision in *Clifton*[3] demonstrates that the CLR, despite any inherent weaknesses, is an accepted calculation of the common level existing in the district and the standard against which the taxpayer's assessment ratio should be measured for uniformity purposes. Indeed, the Court specifically noted that "the CLR is a useful tool for a taxpayer to demonstrate that his property has been over-assessed, as it allows him to compare the assessed-to-market value ratio of his property to the average ratio throughout

---

**3.** *Clifton v. Allegheny County,* 600 Pa. 662, 969 A.2d 1197 (2009).

the district." *Id.* at 693, 969 A.2d at 1216 (footnote omitted). Moreover, as the Court observed, the coefficient of dispersion (COD), one of the accepted statistical indicators of uniformity, measures the "average deviation from the median, mean, or weighted mean ratio of assessed value to fair market value, expressed as a percentage of that figure." *Clifton,* 600 Pa. at 694, 969 A.2d at 1216 (internal quotations and citation omitted). In *Clifton,* the expert calculated the COD using the CLR as the measuring point. In addition, while application of the CLR on a case-by-case basis was inadequate to remedy the pervasive county-wide lack of uniformity demonstrated in *Clifton,* the Court implicitly acknowledged that use of the CLR as a remedy is appropriate when an isolated lack of uniformity has been established: "There may well be circumstances where use of the CLR and the individual appeal process adequately serves to address cases of particular inequity, and as case law demonstrates, both taxpayers and municipalities make use of the appeals process." *Id.* at 712, 969 A.2d at 1227.

Thus, we believe that, absent the kind of circumstances shown in *Clifton,* which mandate county-wide reassessment, or a showing of willful discrimination by the taxing authorities, a taxpayer is entitled only to have his assessment conform with the common level existing in the district, not with a small sample of properties being taxed at a lower than average level. The teaching of *Deitch, Downingtown,* and *Clifton* clearly establish that the Uniformity Clause entitles a taxpayer to pay no more than his fair share; it does not give him a right to pay less. Moreover, to reduce an assessment below the average to that demonstrated by a few comparables or demonstrated to exist in a particular neighborhood would only serve to exac-

erbate a lack of uniformity in the district overall.

*Smith,* 10 A.3d at 405 (footnotes omitted).

██ In the instant case, although the Sullivans may have produced competent evidence in support of their claims, the trial court, as the ultimate finder of fact, was not persuaded by that evidence. The trial court has exclusive province over matters involving the credibility of witnesses and evidentiary weight. *Chartiers Valley Industrial & Commercial Development Authority v. Allegheny County,* 963 A.2d 587 (Pa.Cmwlth.2008). This Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result. *Id.* Moreover, the evidence submitted by the Sullivans was not sufficient to support a countywide reassessment or to show willful discrimination. Thus, under *Smith,* the Sullivans were entitled to have their property's assessment conform to the CLR prevailing in the tax district, which is exactly what the trial court did in this case.

██ The Sullivans next assert that the trial court erred by not ordering a county wide reassessment in accordance with *Clifton v. Allegheny County,* 600 Pa. 662, 969 A.2d 1197 (2009). They complain that Delaware County is using a 1998 base year and has not conducted a countywide reassessment since 2000, and they assert that disparities in Delaware County are similar to those in *Clifton,* in that the lack of uniformity is clear and pervasive.

██ Where it demonstrated that tax inequities are pervasive and problematic, a countywide reassessment may be the only constitutionally appropriate remedy. *Millcreek Township v. County of Erie,* 714 A.2d 1095 (Pa.Cmwlth.1998) (based on a voluminous record containing extensive statistical data, the trial court ordered a countywide reassessment). In *Clifton,* our

Supreme Court concluded that Allegheny County's scheme, which permitted a single base year assessment to be used indefinitely, resulted in significant disparities in the ratio of assessed value to current actual value in that county. The court observed that Allegheny County had a coefficient of dispersion of 30.2 and a price related differential of 1.10. The Supreme Court determined that Allegheny County's system, as applied, violated the Uniformity Clause; the court did not hold that the system was unconstitutional on its face.

Here, the trial court correctly observed that the Sullivans failed to present any county-wide analysis. Instead, they introduced evidence pertaining only to specific geographic areas and specific transactions. Therefore, the Sullivans' evidence did not persuade the trial court. Moreover, the Sullivans did not request a county-wide reassessment in their appeal from the Board, (R.R. at 9), and their counsel made the following representation to the trial court at the beginning of trial:

> [W]e're not seeking a county-wide reassessment along the lines of the *Clifton Case* that was decided by the Supreme Court a month-and-a-half ago. To do that we recognize that we would have to do a humongous statistical study, okay, which we're not doing.

(R.R. at 665–66.) Because no "humongous" statistical study was introduced, the Sullivans rely on a coefficient of dispersal data and price related differential data calculated by STEB, (R.R. at 41), in conjunction with Delaware County's practice of using a 1998 base year, to support their argument that a county-wide reassessment is required pursuant to *Clifton*. However, a county-wide reassessment is a momentous event, and it simply is not reasonable to conclude that a county tax assessment system is constitutionally defective and that a county-wide reassessment is the only constitutionally appropriate remedy based solely on a handful of publically available statistics. We believe it significant that detailed county-wide evidence was produced in both *Clifton* and *Millcreek* and that such evidence is entirely lacking here, and we reject the Sullivans' assertion that a county-wide reassessment was warranted in this case.

■ The Sullivans also contend that the 2005 assessment is void *ab initio* because the assessment notice failed to show the old ratio of assessment and new ratio of assessment as required by former section 8 of the Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. § 5349(b), known as the Second Class A and Third Class County Assessment Law.[4] Citing *City of Connellsville v. Fayette County Tax Claim Bureau*, 159 Pa.Cmwlth. 241, 632 A.2d 1065 (1993), the Sullivans contend that, in analyzing a similar provision in the Fourth–Eighth Class County Assessment Law, we held that improper notice is a fatal defect. In *City of Connellsville*, the assessment status of the city's community center was changed from exempt to taxable, and subsequently the property was scheduled to be sold at a tax sale. The court held that the failure of the county taxing authority to provide notice of the change in the center's tax status within five days of the date the change was made, in violation of statutory notice provisions, rendered the purported change void *ab initio*.

However, the District notes that the Sullivans never appealed the 2005 assessment, and it objects to any attempt by the Sullivans to appeal the 2005 assessment *nunc pro tunc*. The District also notes that, while the Sullivans are complaining that the 2005 notice did not contain the CLR,

---

4. This provision was repealed effective January 1, 2011 by section 6 of the Act of October 27, 2010, P.L. 895. The new statute is found at 53 Pa.C.S. § 8844.

the statutory notice requirements applicable here, formerly at 72 P.S. § 5349(b), do not refer to the CLR established by the Commonwealth, but only to the predetermined ratios changed by the county.

We note that while the Sullivans argue that they should be permitted to appeal *nunc pro tunc*, the only ground they give for such relief is that an administrative breakdown occurred because the assessment notice did not include the CLR. (Sullivans' brief at 25.) Furthermore, the relevant notice provision provided as follows:

(b) The board shall cause to be mailed to each owner of property or person assessed and taxing district having any interest therein, the value of whose property or personal assessment has not theretofore been separately fixed or the value of whose property or personal assessment has been changed from that finally fixed in the preceding assessment roll or when **the established predetermined ratio has been changed** within the county, at his last known address, a notice of such change and the amount of the old assessment, valuation and ratio, if the property or personal assessment was previously separately assessed, and the amount of the new assessment, valuation and **ratio.** Such notice shall be mailed within five days from the date the board made such change or added said property to the roll and shall state that any person aggrieved by any assessment and the said taxing districts may appeal to the board for trial by filing with the board, within forty days of the date of such notice, an appeal, in writing, designating the assessment or assessments by which such person is aggrieved and the address to which notice of the time and place for a hearing of the appeal shall be mailed.

(Former) section 8, 72 P.S. § 5349(b) (emphasis added). The record reflects that the Sullivans are complaining about the absence of the CLR from the notice. (R.R. at 662; Sullivans' brief at 25.) However, the statute only requires notice of a change in the established predetermined ratio, which is the "ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year." *Sims v. Berks County Bd. of Assessment Appeals*, 891 A.2d 816 (Pa. Cmwlth.2006). The CLR, in contrast, is the ratio of assessed value to current market value as determined by STEB. *Id.* Therefore, it follows that 72 P.S. § 5349(b) does not require notice of changes to the CLR.

Accordingly, the Sullivans have not established that they are entitled to bring a *nunc pro tunc* challenge to the 2005 assessment.

 Finally, the Sullivans argue that, because the trial court reduced their assessment, they are entitled to simple interest on any tax refund from the date of overpayment pursuant to *Moore v. Berks County Board of Assessment Appeals*, 888 A.2d 40 (Pa.Cmwlth.2005). This Court has held that a taxpayer who successfully challenges a real estate tax assessment is only entitled to interest from the date a court enters judgment, not the date the taxes were paid. *Welsh Grant Developers Co. v. Board of Revision of Taxes*, 94 Pa.Cmwlth. 159, 503 A.2d 98 (1986). However, the Sullivans contend that the more recent holding in *Moore* allows an award of interest in this case.

In *Moore*, which involved rollback tax payments under the Clean and Green Act, Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. §§ 5490.1—5490.13, we held that section 8426(a) of the Local Taxpayers Bill of Rights Act, 53 Pa.C.S. § 8426(a), provides that interest on overpayment of taxes is to be calculated from

the date of overpayment, rather than the date of a court's order resolving the case:

> In *Air Products & Chemicals, Inc. v. Board of Assessment Appeals,* 720 A.2d 790 (Pa.Cmwlth.1998), this court held that interest on a real property tax refund is not due from the date of overpayment but, rather, from the date of the court order resolving the dispute. However, the holding in *Air Products* has been superseded by statute. Section 8426(a) of the Local Taxpayers Bill of Rights Act, which became effective on January 1, 1999, states that "overpayments of tax due a local taxing authority, including taxes on real property, shall bear simple interest from the ***date of overpayment*** until the date of resolution." 53 Pa.C.S. § 8426(a) (emphasis added). Thus, the trial court did not err in assessing interest on all monies to be refunded to the Moores.

888 A.2d at 44 (emphasis in original).

The District argues that *Moore* is distinguishable because it is not a traditional tax appeal, but rather involves the refund of "rollback taxes" under the Clean and Green Act. However, the District does not explain how or why this distinction is significant or renders the Local Taxpayers Bill of Rights Act inapplicable here. Therefore, we conclude that our holding in *Moore* is controlling.

Accordingly, for all of the above reasons, we affirm.

### ORDER

AND NOW, this 11th day of January, 2012, the order of the Court of Common Pleas of Delaware County, dated September 9, 2010, is hereby affirmed.