ATLANTIC CITY ELECTRIC COMPA-
NY, Keystone–Conemaugh Projects,
Baltimore Gas and Electric Company,
Delaware Power and Light Company,
Metropolitan Edison Company, Sithe
Pennsylvania Holdings LLC, PP & L,
Inc., Peco Energy Company, Potomac
Electric Power Company, Public Ser-
vice Electric and Gas Company, UGI
Utilities, Inc., UGI Development Com-
pany, Appellants,

v.

UNITED SCHOOL DISTRICT, United
School District Board of
Directors.

Commonwealth Court of Pennsylvania.

Argued April 4, 2001.
Decided July 9, 2001.

Before DOYLE, President Judge, COLINS, McGINLEY, SMITH, PELLEGRINI, KELLEY, and LEADBETTER, JJ.

SMITH, Judge.

Atlantic City Electric Company and other electric utilities that jointly own Conemaugh Station, an electric generating facility in Indiana County (together, Conemaugh Station), appeal from an order of the Court of Common Pleas of Indiana County that denied Conemaugh Station's motion for summary judgment and granted the motion for summary judgment of the defendant United School District (District) in Conemaugh Station's civil action. Conemaugh Station filed its action for declaratory and injunctive relief seeking to block the District's collection of a real estate tax bill for the period January 1, 2000 to June 30, 2000.

Conemaugh Station raises various issues in this appeal. It questions whether an amendment to provisions relating to the public utility realty tax authorizes a school district to impose an interim tax on electric generation realty for the period at issue; whether the Public School Code of 1949 (School Code) [1] authorizes a school district to impose an interim tax for this period; whether the "tax assessment day rule" prohibits a school district from later imposing an interim tax on real property that was exempt at the time of the district's annual tax levy; and whether a direction to pay real estate tax for one-half of a year only violates principles of uniformity of taxation and equal protection of the laws.

## I

The parties' extensive stipulations before the Court of Common Pleas established that the District is a school district

Raymond P. Pepe, Harrisburg, for appellants.

Ira Weiss, Pittsburgh, for appellees.

1. Act of March 10, 1949, P.L. 30, *as amended,*   24 P.S. §§ 1–101—27–2702.

of the third class, located in a county of the sixth class, and that it operates on a fiscal year beginning July 1. Pursuant to Section 672(a) of the School Code, 24 P.S. § 6–672(a), the District was required to levy taxes for the fiscal year no later than June of the preceding year. Real property in Indiana County (County) is assessed for purposes of local taxation pursuant to The General County Assessment Law[2] and The Fourth to Eighth Class County Assessment Law.[3] On June 8, 1999, the District's School Board adopted a resolution levying a real estate tax of 87 mills on the assessed value of real property subject to local taxation for the 1999–2000 fiscal year.

All of Conemaugh Station's property at issue is used in the generation of electricity. At the time of the June 8 resolution the property was listed on the tax duplicate as being exempt from local taxation pursuant to the Act commonly known as the Public Utility Realty Tax Act (PURTA).[4] Conemaugh Station paid PURTA taxes to the Commonwealth in lieu of local real estate taxes. Section 1104–A(a) of PURTA, 72 P.S. § 8104–A(a).[5] The Act of May 12, 1999, P.L. 26 (Act 4), amended the definition of "Utility realty" in Section 1101–A(3) of PURTA, 72 P.S. § 8101–A(3), to exclude "after December 31, 1999, land and improvements to land that are indispensable to the generation of electricity," thereby removing the exemption for such property from local taxation.

On December 14, 1999, the District's School Board adopted a "Resolution Supplementing Resolution Levying School Code Taxes," which stated that the Governor had signed the May 1999 amendment to PURTA subjecting electric generating property to local real estate taxation effective January 1, 2000 and that the purpose of the resolution was to confirm the applicability of the June 1999 tax levy to electric generation property as of January 1, 2000. The resolution applied the District's real estate tax to that property as of that date, and it directed the County assessment office to inspect and assess all electric generation property in the District pursuant to PURTA and to add such property to its tax rolls effective January 1, 2000 in the same manner as new construction and improvements are added pursuant to Section 677.1 of the School Code, added by Section 1 of the Act of January 14, 1952, P.L. (1951) 1944, 24 P.S. § 6–677.1. The property was to be taxed for one-half year. Conemaugh Station paid the three bills sent by the tax collector, totaling $148,914.43, under protest.

By agreement of the parties the trial court converted the preliminary injunction proceeding into a hearing on the merits to be disposed of on cross motions for summary judgment. The trial court first addressed Conemaugh Station's contention that the District violated various statutes by levying a tax upon it in December 1999. The court cited a definition of a tax "levy" as "the formal and official action of a legislative body determining and declaring that a tax of a certain amount, or of a certain

2. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–1—5020–602.

3. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §§ 5453.101–5453.706.

4. Article XI–A of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, added by Section 3 of the Act of July 4, 1979, P.L. 60, 72 P.S. §§ 8101–A—8110–A.

5. As explained in *Safe Harbor Water Power Corp. v. Judge*, 758 A.2d 259 (Pa.Cmwlth. 2000), because public utilities own very expensive pieces of real estate located in one area that may serve large portions of the state, the legislature enacted PURTA to spread the equivalent of real estate tax receipts from public utilities proportionately among local taxing authorities.

percentage of value, shall be imposed on persons and property subject thereto." *Prichard v. School District of Willistown Township*, 394 Pa. 489, 500, 147 A.2d 380, 387 (1959). Further, the court noted that Section 603 of the School Code, 24 P.S. § 6–603, provides that there shall be "but one levy of school taxes made in each school district in each year," and that Section 672 of the School Code requires that in designated districts all school taxes shall be levied and assessed by the school board between February and June for the following fiscal year. The court concluded that the June 1999 resolution was the tax "levy" and that the December 1999 resolution did nothing more than to permit the June levy to be applied to electric generating property as of January 1, 2000.

The trial court rejected Conemaugh Station's application of the rule stated in *Appeal of Title Services, Inc.*, 433 Pa. 535, 252 A.2d 585 (1969), that a property's tax status becomes fixed on the day of assessment, unless expressly provided to the contrary. The court noted that after *Title Services, Inc.* was decided the legislature amended Section 505 of The General County Assessment Law, 72 P.S. § 5020–505, and Section 701 of The Fourth to Eighth Class County Assessment Law, 72 P.S. § 5453.701, to add identical language providing that:

> The board is authorized to make additions and revisions to the assessment roll of persons and property subject to local taxation at any time in the year, so long as the notice provisions are complied with. All additions and revisions

shall be a supplement to the assessment roll for levy and collection of taxes for the tax year for which the assessment roll was originally prepared, in addition to being added to the assessment for the following calendar or fiscal tax years. 72 P.S. § 5020–505(b).[6] Therefore, the court concluded that the law now "expressly provided to the contrary" within the meaning of *Title Services Inc.*, and the "tax assessment day rule" did not apply.

■ The trial court rejected Conemaugh Station's reliance upon *City of Harrisburg v. Dauphin County Board of Assessment Appeals*, 677 A.2d 350 (Pa. Cmwlth.1996), where this Court agreed that particular reassessments were de facto but incomplete countywide reassessments. The trial court noted that in *City of Harrisburg* the plaintiffs sued the proper party, namely, the board of assessment appeals, whereas here Conemaugh Station failed to sue the proper party. For the same reason, the court rejected Conemaugh Station's claim of a violation of Section 402(a) of The General County Assessment Law, 72 P.S. § 5020–402(a), relating to valuation of property. That section addresses duties of "elected and appointed assessors," not those of a school district. Finally, the trial court concluded that the statutory sections applied to all persons and entities equally; that the newly amended sections of PURTA clearly removed electric generation realty from its previous exempt status to taxable status beginning on January 1, 2000; and that the District was not singling out electric generating stations.[7]

---

**6.** In 72 P.S. § 5020–505(b) "board" refers to the board of revision or for assessment and revision of taxes. In 72 P.S. § 5453.701(a.1) "board" refers to the board of assessment appeals, and the first sentence refers to notice provisions "of this section." Section 505 was amended by Section 1 of the Act of October 5, 1978, P.L. 1142, and Section 701 was amend-

ed by Section 2 of the Act of October 5, 1978, P.L. 1138.

**7.** The Court's review of a trial court's grant of summary judgment is limited to determining whether the trial court committed an abuse of discretion or an error of law. *Jones v. Southeastern Pennsylvania Transportation Authority*,

## II

Conemaugh Station first argues that the threshold issue is whether Act 4 of 1999 subjected real property used in the generation of electricity to local property taxes as of January 1, 2000. It notes that historically property owned by local utilities was exempt from local taxation as a form of "public property." Act 4 amended PURTA by implementing provisions of the Electric Generation Customer Choice and Competition Act, 66 Pa.C.S. §§ 2801–2812. As part of that change in the manner of regulation, Act 4 amended the definition of "Utility realty" in Section 1101–A of PURTA and required local tax assessors "to enroll utility realty separately from the other real estate of a public utility" after December 31, 1998. Section 1105–A(a), 72 P.S. § 8105–A(a). Conemaugh Station asserts that Act 4 did not, however, change the timetable for the payment of utility realty taxes and the distribution of those revenues to local taxing authorities. The distribution of revenues to the local taxing authorities remained set for October 1 of each year under Section 1107–A(b), 72 P.S. § 8107–A(b).

Conemaugh Station states that the legislature may have created some confusion as to when the exemption from local real estate taxes no longer applies to electric generation realty by stating in Section 1102–A(b), 72 P.S. § 8102–A(b), that the PURTA tax payment due after November 1, 1999 was for the tax year 1998, and the payment due after August 1, 2000 was for the tax year 1999. The operative language of Section 1102–A(b) is as follows:

> (b) On or before November 1, 1999, for taxable year 1998, and on or before August 1, 2000, for taxable year 1999, and for every year thereafter, the department shall calculate the millage rate

for the taxable year and notify the public utility of the millage rate and the State taxable value of its utility realty. As the District argues, Conemaugh Station offers no persuasive explanation why the fact that it must pay PURTA taxes relating to 1999 in the year 2000 has any relation to the taxable status of its electric generation realty as of January 1, 2000.

■ PURTA throughout recognizes a distinction between a "taxable year," which is a calendar year, and a distinct fiscal year that a local taxing authority may employ. Conemaugh Station's taxes for the 1999 taxable year included the value of the property at issue, which was still subject to PURTA tax through December 31, 1999. Conemaugh Station's PURTA taxes for the taxable year 2000, to be billed and paid in 2001, will not include any tax for the realty that ceased to be taxable under PURTA as of January 1, 2000 and became subject to local real estate tax. This presumably is why Conemaugh Station stipulated before the trial court that local real estate taxes are the only property taxes due on the disputed parcels by Conemaugh Station for local taxes levied after January 1, 2000 for the year 2000 and for subsequent years. Contrary to Conemaugh Station's suggestion, the imposition of local realty taxation does not mean that Conemaugh Station's property has been subject to double taxation. Rather, subjecting Conemaugh Station's property to local realty tax beginning January 1, 2000 is necessary to insure that there is not a gap during which the property would not be subject to local real estate taxation or its equivalent for the benefit of the District.

## III

The foregoing conclusion relates also to Conemaugh Station's second contention,

748 A.2d 1271 (Pa.Cmwlth.2000), *aff'd,* 565 Pa. 211, 772 A.2d 435 (2001).

which is that Act 4 did not confer authority upon the District to levy and demand payment of interim taxes unilaterally and informally. It notes that in addition to Act 4 the District relies upon Section 505(b) of The General County Assessment Law, Section 701(a.1) of The Fourth to Eighth Class County Assessment Law and Section 677.1 of the School Code. The first two sections, quoted above, provide generally that boards of revision or assessment appeals may revise the assessment roll of persons and property at any time during the year so long as certain notice provisions are complied with and that revisions according to those procedures are a supplement to the original assessment roll.

Section 677.1 of the School Code provides that in certain classes of school districts, when there is construction of a nonexempt building, and the board of school directors makes a request, the assessor shall inspect and assess the property and give notice to the owner and the school district within 10 days of the change in assessed valuation and of a right of appeal. Such property shall be added to the duplicate and "shall be taxable for school purposes at the assessed valuation for that proportionate part of the fiscal year of the school district remaining after the property was improved." *Id.* Conemaugh Station notes that a grant of the power to tax must be strictly construed, *Mastrangelo v. Buckley*, 433 Pa. 352, 250 A.2d 447 (1969). It asserts that Act 4 created a transition scheme that eliminates the value of electric generation property from the value of utility realty used to calculate PURTA taxes but that it did not create a legal basis for the District to levy an interim real estate tax.

■ The Court agrees with the trial court and the District that Conemaugh Station's strained interpretation of the authority conferred by Act 4 lacks any support. Electric generation property previously was exempt from local real estate taxation solely because it was taxable under PURTA. When the exemption was abolished, and no other exemption was asserted, the property became taxable. Section 672(b) of the School Code, 24 P.S. § 6–672(b), provides: "Boards of school directors of districts of the second, third, and fourth classes are hereby authorized to levy annually, a tax on each dollar of the total assessment of all property assessed and certified for taxation therein." Act 4 authorized normal local taxation.

### IV

Conemaugh Station contends in Parts II and IV of its brief that the imposition of real estate tax upon it was illegal because all proper notice procedures were not followed. It notes that Section 701(a) of The Fourth to Eighth Class County Assessment Law, 72 P.S. § 5453.701(a), states that the board of assessment appeals shall cause a notice of a change in assessment to be sent within five days to the owner. Section 677.1 of the School Code contains the notice provisions referenced above, and Section 1106.1–A(b) of PURTA, 72 P.S. § 8106.1–A(b), requires the appropriate assessment authority to provide written notice to public utilities of changes in assessments.

■ Conemaugh Station cites *City of Connellsville v. Fayette County Tax Claim Bureau*, 159 Pa.Cmwlth. 241, 632 A.2d 1065 (1993), for the proposition that compliance with these provisions is mandatory. In that case this Court affirmed a trial court's decision that failure to provide statutory notice to a city of the change in status of a piece of its property from tax exempt to taxable, where the property was later listed for tax sale, was a fatal defect that rendered the change in status void *ab initio*. Here the record shows that the

District informally requested that the assessment be changed, and the District stipulated that no notice of a change in the taxable status or valuation was provided to Conemaugh Station. The Court agrees with the trial court and the District, however, that allegations of inadequate notice are not properly made against the District, which was the only party named as a defendant. As the District stresses, assessment of property is a function over which the District has no legal power or authority; rather, this power is reserved to the County assessment authorities. As previously noted, in *Dauphin County Board of Assessment Appeals* the plaintiffs sued the proper party to challenge their assessments. Here Conemaugh Station has not.[8]

## V

Finally, Conemaugh Station asserts that the addition of its property to the tax rolls constituted a "spot assessment" in violation of Section 402(a) of The General County Assessment Law, 72 P.S. § 5050–402(a). It cites *Althouse v. County of Monroe*, 159 Pa.Cmwlth. 467, 633 A.2d 1267 (1993), among other cases, for the proposition that a board of assessment may not reassess selected parcels without conducting a countywide reassessment. In *Althouse* the Court affirmed the decision that the assessment authorities could not selectively reassess where the reason was not to correct a mathematical error or some other reason approved by statute. Conemaugh Station states that because the District's December 1999 resolution "singled out" electric generation property, it violated this principle, as well as the requirement of uniformity of taxation set forth in Article VIII, Section 1 of the Pennsylvania Constitution. Further, Conemaugh Station maintains that the "unabashed targeting" of electric generation property abridged its rights to equal protection of the laws secured by the Fifth and Fourteenth Amendments to the United States Constitution and the Pennsylvania Constitution.

■ The trial court correctly rejected these contentions in short order. Again, Conemaugh Station has failed to sue the party that performed the assessment. In addition, the present case involves the addition of property to the tax rolls after an exemption was statutorily abolished. Conemaugh Station's complaint really is with the constitutionality of Act 4 as imple-

---

**8.** Although Conemaugh Station did not state as a separate question presented, and therefore waived the issue, *see* Pa. R.A.P. 2116, it also argues that the December 1999 resolution of the School Board constituted a second "levy" of taxes by the District, in violation of the requirement of Section 603 of the School Code, 24 P.S. § 6–603, that there be only one annual levy of school taxes in each school district in each year. As the trial court correctly noted, however, the School Board's June resolution constituted the annual "levy," establishing the millage rate applicable to all taxable property. The December resolution simply acknowledged that certain property not taxable earlier would become taxable as of January 1, 2000 pursuant to Act 4 and stated that it should be added to the rolls in the same manner as new construction.

Conemaugh Station also repeats its contention that a change in the taxable status of the property was prohibited by the "tax assessment day rule." It asserts that, although the 1978 amendments to the assessment laws provide for the making of "additions and revisions" to the assessment rolls, they do not expressly authorize changes to the list of properties exempt from or excluded from taxation. The Court disagrees. The plain language of the amendments states that "additions and revisions" authorized "shall be a supplement to the assessment roll *for levy and collection of taxes for the tax year for which the assessment roll was originally prepared*" as well as for later years. 72 P.S. §§ 5020–505(b) and 5453.701(a.1) (emphasis added).

mented through the assessment laws, but it has not articulated an argument as to why the legislature may not act for policy reasons to change the manner of regulation of a particular industry under the applicable equal protection analysis. *See Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (holding that equal protection is not denied when classification of property for tax purposes is neither arbitrary nor capricious and rests upon some reasonable consideration of difference or policy). Similarly, as the trial court noted, the District did not treat Conemaugh Station's property differently from all others by subjecting it to an interim tax. All properties are subject to the mandates of the assessment laws as amended. Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 9th day of July, 2001, the order of the Court of Common Pleas of Indiana County is affirmed.