**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| CIRCLE OF SEASONS CHARTER SCHOOL, | : | No. 99 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court dated March |
| | : | 14, 2022 at No. 1255 CD 2020 |
| | : | Reversing the Order of the Lehigh |
| v. | : | County Court of Common Pleas, |
| | : | Civil Division, dated November 9, |
| | : | 2020 at No. 2019-C-3837 and |
| NORTHWESTERN LEHIGH SCHOOL | : | Remanding with directives to |
| DISTRICT, | : | transfer to the County of Lehigh |
| | : | Court of Assessment Appeals. |
| Appellant | : | |
| | : | ARGUED: March 5, 2024 |

**OPINION**

**JUSTICE McCAFFERY**                    **DECIDED: September 26, 2024**

In this discretionary appeal, we consider two distinct, yet related, issues. The first concerns the obligation of a taxpayer to establish its eligibility for a property tax exemption when the notice of a change in assessment does not comply with the statutory requirements. The second issue contemplates whether *nunc pro tunc* relief is available to the taxpayer based upon the defective notice, when it failed to request retroactive relief in a prior administrative appeal.

Here, the Commonwealth Court determined that Lehigh County sent property assessment change notices to Circle of Seasons Charter School (Charter School) and failed to include the statutorily required mailing date. Therefore, it found Charter School was entitled to a *nunc pro tunc* hearing before the Lehigh County Board of Assessment

Appeals (the Board) to seek a refund of the taxes it paid to Northwestern Lehigh School District (School District) during the time when it should have been deemed tax exempt.

We conclude, however, that once a county assessment office assesses property as taxable, a taxing authority is required to generate a property tax bill, unless — and until — the taxpayer demonstrates the property's eligibility for a tax exemption in an appeal to the tax assessment board. Contrary to certain beliefs, tax exemptions are not self-executing. Further, we hold that when the county assessment notice does not conform with the statutory requirements, a taxpayer is entitled to an appeal before the assessment board but must pursue relief in a timely manner when it receives actual notice of the change in assessment. Moreover, when a taxpayer files an appeal before the board, it must raise all claims related to the challenged reassessment, including a request for retroactive relief and a refund for taxes previously paid, or risk waiver. *Nunc pro tunc* relief is reserved for extraordinary circumstances, and absent any negligent or misleading actions by an administrative body, it is not available to parties who simply fail to pursue their claims in a timely manner.

For the reasons below, we reverse the order of the Commonwealth Court, and reinstate the order of the trial court sustaining School District's preliminary objections and dismissing Charter School's complaint with prejudice.

## I. Legal Background

We begin with "[t]he elementary premise … that the power to tax is exclusively vested within the legislature." *Southeastern Pennsylvania Transp. Auth. (SEPTA) v. Bd. of Revision of Taxes*, 833 A.2d 710, 713 (Pa. 2003) (citation omitted). In Pennsylvania, the legislature authorizes school districts to impose real estate taxes on property within their districts. *See* 53 Pa.C.S. § 8811(a).

Notably, "property owned by the Commonwealth and its agencies is immune from taxation by a local subdivision in the absence of express statutory authority." *SEPTA*, 833 A.2d at 713 (citations omitted). *See Commonwealth v. Dauphin Cnty.*, 6 A.2d 870, 872 (Pa. 1939) ("The legislators did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes."). Further, the Pennsylvania Constitution authorizes the legislature to, "by law[,] **exempt**" certain classes of property from taxation, including "[t]hat portion of public property which is actually and regularly used for public purposes." PA. CONST. art. VIII, § 2(a)(iii) (emphasis added). The distinction between property immune from taxation and property exempt from taxation is significant.

When property is immune, the taxing body has no "authority to levy a tax." *SEPTA*, 833 A.2d at 713 (citation omitted). In contrast, a tax "exemption does not implicate the authority to tax, but rather **excludes** specified property from taxation." *Delaware Cnty. Solid Waste Auth. v. Berks Cnty. Bd. of Assessment Appeals*, 626 A.2d 528, 530 (Pa. 1993) (emphasis added). Accordingly, a taxpayer that claims its property is tax exempt bears the burden of establishing the applicable exemption. *See SEPTA*, 833 A.2d at 713. *See also Four Freedoms House of Philadelphia, Inc. v. City of Philadelphia*, 279 A.2d 155, 157 (Pa. 1971) ("Since liability of all real estate is the rule with exemption the exception, … the burden is placed on the claimant to bring itself within the exemption.") (citation omitted).

It is well-settled that public school "buildings[, as well as] the ground annexed and necessary for the occupancy and use of the school buildings[,]" are tax **exempt** under the Consolidated County Assessment Law (Assessment Law).[1] 53 Pa.C.S. § 8812(a)(5).

---

[1] 53 Pa.C.S. §§ 8801-8868. The Assessment Law governs Lehigh County, a county of the third class. *See* 53 Pa.C.S. § 8801(b)(1)(i). The General County Assessment Law (continued…)

This exemption also extends to particular property of approved charter schools. *See* 24 P.S. § 17-1722-A(e)(1). Charter schools are created and governed under the Charter School Law. *See* 24 P.S. §§ 17-1701-A-17-1751-A. Those proposing a charter school must submit an application for a charter to the local school board.[2] *See* 24 P.S. § 17-1717-A(c). After a charter is granted, property owned by the charter school "that is occupied and used … for public school, recreation or any other purposes provided for" under the Charter School Law, is "made exempt from every kind of" real estate taxes. 24 P.S. § 17-1722-A(e)(1).

Property assessments are determined by the county assessment office. At any time during the year, the county assessment office has the authority "to make additions and revisions to the assessment roll … to change the assessment of existing properties … or add properties … mistakenly omitted" so long as it provides notice to the property owner "in accordance with [S]ection 8844[.]" 53 Pa.C.S. § 8841(c). Property assessment changes may include, as here, an adjustment from nontaxable status to taxable status following the sale of the property, or an increase in the assessed amount.

Section 8844 requires the county assessment office to mail the assessment change notice to "each record property owner," and mandates that, among other things, the notice indicates the "[m]ailing date[,]" as well as the prior and revised assessed values. 53 Pa.C.S. § 8844(a)(1), (7)-(8). The mailing date is essential because the Assessment Law affords a taxpayer "aggrieved by the assessment" the right to "file an appeal to the

---

governs first and second class counties. *See* 72 P.S. § 5020-101, Credits; 53 Pa.C.S. § 8803(3).

[2] The Charter School Law provides that "an individual; one or more teachers …; parents or guardians of students …; any nonsectarian college, university or museum located in this Commonwealth; any nonsectarian corporation not-for-profit, … any corporation, association or partnership; or any combination thereof" may establish a charter school. 24 P.S. § 17-1717-A(a).

[Assessment B]oard within 40 days of the date of the notice." 53 Pa.C.S. § 8844(b). Further, the Assessment Law states that while a "defect in service of any notice" is not grounds for setting aside an assessment, "upon proof of defective notice, the aggrieved party … shall have the right to a hearing before the [B]oard." 53 Pa.C.S. § 8845. An aggrieved taxpayer also may file an "[a]nnual appeal" on or before a date designated by the county commissioners. 53 Pa.C.S. § 8844(c)(1).

Additionally, the Tax Refund Law[3] permits a taxpayer, within three years of payment, to file a written claim for the refund of taxes it paid, either "voluntarily or under protest," to a political subdivision which was "not legally entitled" to the taxes. 72 P.S. § 5566b(a). If the taxing authority refuses to provide a refund, the taxpayer has the right to file "an action in assumpsit in the court of common pleas[.]" 72 P.S. § 5566c. Relevant herein, the Tax Refund Law explicitly states: "The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved **had or has available under any other statute, … a specific remedy by way of review, appeal, refund or otherwise**, for recovery of moneys paid as aforesaid[.]" 72 P.S. §5566b(b) (emphasis added).

With this in mind, we turn to the facts of the case before us.


## II. Facts and Procedural History

In May of 2012, Charter School applied to School District to operate a charter school, servicing kindergarten through eighth grade, beginning in the 2013-2014 school year. School District approved the application and issued the charter. On September 21, 2016, the charter was renewed for an additional five-year term.

---

[3] 72 P.S. §§ 5566b-5566c. The Tax Refund Law is part of the Local Tax Collection Law. *See* 72 P.S. §§ 5511.1-5511.42.

Charter School operated on two adjacent properties (Properties) located at 8380 and 8384 Mohr Lane in Fogelsville, Pennsylvania. When Charter School began its operations, these Properties were owned by The Pennsylvania State University (PSU) and were tax exempt as part of its Lehigh Valley Campus. In May 2017, Charter School purchased the Properties from PSU, with the intent to continue using them for the operation of a charter school.

Following the sale of the Properties, on or around June 5, 2017, Lehigh County issued two assessment notices (Notices) for the Properties, revising their tax statuses from "Non-Taxable Assessed" to "Taxable Assessed," with an effective date of January 1, 2018. *See* Preliminary Objections, 1/28/2020, Exhibit D-6 (Notices). The Notices did **not** include the mailing date, as required by Section 8844(a). Nevertheless, the Notices explicitly informed Charter School of its statutory right to appeal the assessment:

> An appeal must be filed in writing on or before 07-17-17. You also have the right to file an annual appeal on this property assessed value in writing on or before the 1st day of August.

*Id. See* 53 Pa.C.S. § 8844(b), (c)(1). Although the Notices were mailed to Charter School at the Mohr Lane addresses, and neither was returned as undeliverable, Charter School claims it did not receive the Notices.

Thereafter, in July 2017, School District sent Charter School two school real estate tax bills for the 2017 tax year, with a total amount due of $109,564.75, if paid before August 31st. Charter School, again, claims it never received the tax bills. School District subsequently sent reminder invoices in November 2017, which included a late payment penalty, for a total amount due of $122,980.84.[4] However, Charter School still took no action — it neither paid the invoices nor objected to the revised assessments.

---

[4] Charter School asserts that "this Reminder Notice was the first communication it received from any taxing body suggesting that the [Properties were] subject to real estate tax." Charter School's Brief at 6.

The following summer, in June 2018, Charter School refinanced the Properties. At settlement, the closing agent collected $124,506.39 in "Delinquent Taxes" for the Properties. *See* Complaint, 12/17/2019, at ¶ 6. On July 1, 2018, School District sent Charter School annual tax invoices for the 2018 tax year. Charter School later paid those invoices (with a penalty) in December 2018.

Meanwhile, in July 2018, Charter School filed an **annual appeal** to the Board challenging the assessment of the Properties as taxable. The Board conducted a hearing in September 2018, and issued a notice of its decision on October 31st. The Board "**granted** total tax exemption on the [Properties] effective **January 1, 2019**" and stated the exemption would "continue so long as the use justifies the exemption." Preliminary Objections, Exhibit D-7 (Board Decision Notice, 10/31/2018) (emphasis in original). Neither Charter School nor School District appealed this ruling. As noted above, in December 2018, **after** the Board issued its decision granting the Properties tax exempt status, Charter School paid the School Board's invoices for the 2018 tax year.

Six months later, in June 2019, Charter School sent School District a demand letter, accompanied by a refund claim form, seeking a refund of the $249,622.80 in real estate taxes it paid for the prior two tax years. *See* Complaint, Exhibit D (Demand Letter, dated 6/6/2019). When it received no response, Charter School filed a civil complaint on December 17, 2019, asserting a claim in assumpsit pursuant to the Tax Refund Law[5] and a claim for unjust enrichment.

School District filed timely preliminary objections asserting, *inter alia*, the trial court lacked subject matter jurisdiction, and Charter School failed to exhaust its statutory remedies. *See* Pa.R.C.P. 1028(a)(1), (7). With regard to the Tax Refund Law claim, School District maintained that it was "legally entitled to collect property taxes" from

---

[5] *See* 72 P.S. § 5566c.

Charter School after Charter School purchased the properties and failed to file for "tax[]exempt status," and argued Charter School did not exhaust its statutory remedies by appealing the Board's decision to grant it tax exempt status effective January 1, 2019. Preliminary Objections at ¶¶ 18, 29-31. Similarly, School District asserted that the equitable remedy of unjust enrichment was also unavailable because Charter School failed to exhaust its statutory remedies. *See id.* at ¶ 44.

Charter School filed a response, and the trial court permitted the parties to supplement the record with affidavits. After conducting argument in August of 2020, the court entered an order on November 9, 2020, sustaining School District's preliminary objections and dismissing Charter School's complaint with prejudice. *See* Order 11/9/2020. In an accompanying opinion, the trial court recognized the reassessment Notices sent to Charter School were "devoid of the mailing date which is required pursuant to" Section 8844(a) of the Assessment Law. Trial Court Opinion, 11/9/20, at 5. Moreover, the court observed Section 8845 "provides that proof of a defective notice affords the aggrieved party the right to a hearing before the [B]oard." *Id.* (*citing* 53 Pa.C.S. § 8845). Nevertheless, the trial court found that, while Charter School claimed it never received the Notices mailed in June of 2017, "it was undisputed that [Charter School] became aware of the 2017 tax in November of 2017 with the receipt of the reminder notice and certainly by the June 15, 2018 settlement … when the 2017 delinquent taxes were paid as line items on the settlement sheet."[6] *Id.* Thus, the court determined that Charter

---

[6] The trial court also found School District was entitled to a presumption that the mailed Notices were received pursuant to the mailbox rule. *See* Trial Court Opinion at 4 (*citing Dept. of Transportation v. Brayman Constr. Corp.*, 513 A.2d 562, 566 (Pa. Cmwlth. 1986) (proof of mailing of a document raises rebuttable presumption it was received and testimony denying receipt is insufficient to nullify presumption)). School District submitted an affidavit from the Director of Real Estate of Lehigh County who averred that the county mailed the Notices to the Mohr Lane addresses on "or around June 5, 2017." Affidavit of Francis J. Unger, Jr., 3/4/2020, at 1. Although Charter School continued to assert that it (continued…)

School could have addressed the 2017 and 2018 taxes in its 2018 annual appeal. As for Charter School's contentions that the tax assessment changes are effective the "next fiscal year," and, in any event, the Properties should have remained tax exempt, the court noted these arguments also could have been raised in the 2018 appeal. *Id.* (stating these claims are not "absolute" and "require examination and proper presentation to the [B]oard for the appropriate remedy"). Thus, because Charter School failed to exhaust its statutory remedies, the trial court sustained School District's preliminary objections to both counts and dismissed the complaint with prejudice.[7]

Charter School appealed to the Commonwealth Court. In a unanimous, three-judge opinion, the Commonwealth Court reversed the trial court's order dismissing Charter School's complaint and remanded with directions to transfer the matter to the Board for a *nunc pro tunc* appeal to decide "whether the County's assessment notices of June 5, 2017, were valid, whether Charter School's properties are taxable, and whether Charter School is entitled to a refund from the School District." *Circle of Seasons Charter School v. Northwestern Lehigh School District*, 273 A.3d 23, 33 (Pa. Cmwlth. 2022).

The Court began by considering the statutes at issue: the Charter School Law, the Assessment Law, and the Tax Refund Law. The Commonwealth Court observed that the Charter School Law clearly states property used as a charter school is exempt from taxation, the same as property used by a public school. *See Circle of Seasons*, 273 A.3d at 29. Relying on *Wellsboro Area Sch. Dist. v. Tioga Cnty. Bd. for Assessment & Revision of Taxes*, 651 A.2d 592 (Pa. Cmwlth. 1994), the Court declared: "Once a charter school

---

never received the initial Notices in its Commonwealth Court appeal, the Court did not address that claim. Instead, it focused on Charter School's alternative argument — that the Notices were "facially defective, and, thus, void *ab initio*." *Circle of Seasons*, 273 A.3d at 30. Charter School does not further press the mailbox rule claim in this appeal.

[7] The court also determined it had no subject matter jurisdiction over Charter School's assumpsit claim. *See* Trial Court Opinion at 6.

has demonstrated that it is using its property for purposes consistent with the Charter School Law, it[s property] is presumed to be exempt from taxation and the county has the burden of proving otherwise." *Circle of Seasons*, 273 A.3d at 29 (*citing Wellsboro*, 651 A.2d at 595-596).

The Commonwealth Court further explained that, pursuant to the Assessment Law, the county assessment office must notify a property owner of a change in assessment and the "mailing date in the notice is essential" because a taxpayer has 40 days to appeal any change in the assessed value. *Circle of Seasons*, 273 A.3d at 30. It emphasized the Assessment Law explicitly provides that "upon proof of defective notice, the aggrieved party or taxing district shall have the right to a hearing before the board." *Id.* (*citing* 53 Pa.C.S. § 8845). Lastly, the Court noted that although the Tax Refund Law permits a taxpayer to "file a written claim for a refund of taxes unlawfully paid[,]" a claim is "not available where the taxpayer has 'a specific remedy…' under 'any other statute.'" *Id.* (*citing* 72 P.S. § 5566b(b)).

Turning to the present matter, the Commonwealth Court first concluded there was "no dispute" the Notices did not include the requisite mailing date, and therefore, Charter School "lacked the information 'essential'" to file an appeal to the Board. *Circle of Seasons*, 273 A.3d at 31. Accordingly, the Court determined Charter School was entitled to a Section 8845 hearing to consider "whether its school properties had ever belonged on the rolls of taxable property in the County." *Id.* Because this statutory remedy was available, the Commonwealth Court agreed that the trial court properly refused to assume equity jurisdiction over the matter. *See id.*

Next, the Court rejected School District's claim that Charter School waived its right to challenge the defective Notices when it paid the real estate taxes. *See Circle of Seasons*, 273 A.3d at 32. Distinguishing a Superior Court decision upon which School

District relied,[8] it emphasized that Charter School paid the taxes only at the direction of the settlement agent, and then promptly appealed the assessment to the Board, which ultimately granted relief. *See id.*

Accordingly, the Commonwealth Court opined the trial court erred when it dismissed Charter School's complaint with prejudice "[g]iven the … court's finding that the County's notice was defective[.]" *Circle of Seasons*, 273 A.3d at 32. Rather, the Court determined *nunc pro tunc* relief was warranted because the defective Notices established "negligence by [an] administrative agency" justifying such relief. *Id.* (*citing Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Rev. of Allegheny Cnty.*, 746 A.2d 581, 584 (Pa. 2000) ("[W]here an administrative body acts negligently, improperly or in a misleading way, an appeal *nunc pro tunc* may be warranted.")). Noting that Charter School's "proper mode of relief" was to challenge the assessment (and improper Notices) before the Board, the Commonwealth Court reversed the trial court's order and remanded with directions to the trial court to transfer the matter to the Lehigh County Board of Assessment Appeals. *Id.* at 33.

III. Issues

We granted allowance of appeal to consider the following questions:

(1) Did the Commonwealth Court err in reversing the trial court's ruling that it had no jurisdiction to entertain the Circle of Season Charter School's tax refund claims for tax years 2017 and 2018 because Circle of Seasons had failed to seek redesignation of those properties as

---

[8] In *Appeal of York & Foster*, 63 A.2d 358 (Pa. Super. 1949), the Superior Court held that, although a taxpayer was not served with actual notice of an assessment increase, the taxpayer "admitted its property was correctly valued for that year," when the taxpayer paid the increased tax without protest. *Id.* at 359-360. The Commonwealth Court distinguished *Appeal of York & Foster* for the sole reason that it involved a "tax increase" rather than a "tax exemption." *Circle of Seasons*, 273 A.3d at 32.

nontaxable before the Lehigh County Board of Assessment Appeals before seeking refunds for those years, thus failing to exhaust its administrative remedies pursuant to Pa.R.C.P. 1028(a)(7)?

(2) Did the Commonwealth Court err in directing a remand to the Lehigh County Board of Assessment Appeals for an appeal *nunc pro tunc* of the taxpayer's taxable designation of two properties for tax years 2017 and 2018 on the basis of defective notice of the designation, when the taxpayer paid those levies, did not seek redesignation or refunds for 2017 and 2018 when it challenged its 2019 taxable designation before the Board, did not name the Board as a party to a claim relying upon a defective reassessment notice, and did not seek *nunc pro tunc* relief from the Commonwealth Court?

*Circle of Seasons Charter School v. Northwestern Lehigh School District*, 285 A.3d 598 (Pa. 2022) (*per curiam*).  Because School District's claims are interrelated, we address them together.

## IV. Parties' Arguments

First, School District insists the trial court properly determined it lacked subject matter jurisdiction over Charter School's refund claim because Charter School failed to exhaust its statutory remedies[9] — namely, Charter School did not timely challenge the assessment of the Properties as taxable.  *See* School District's Brief at 14.  School District emphasizes that tax exemptions are "not self-executing[;]  consequently, when "Charter School failed to establish itself as exempt from taxation, … School District justifiably issued tax bills and collected taxes to which it was legally entitled."  *Id.*  Moreover, because Charter School had an available remedy under the Assessment Law, School District asserts the Tax Refund Law did not apply.  *Id.* at 15 (*citing* 72 P.S. § 5566b(b)). Relying on this Court's decision in *Lincoln Philadelphia Realty Assocs. I v. Board of*

---

[9] As noted above, the trial court resolved this claim by sustaining School District's preliminary objections.  *See* Pa.R.C.P. 1028(a)(7) ("failure to exercise or exhaust a statutory remedy").

*Revision of Taxes*, 758 A.2d 1178 (Pa. 2000), School District contends that when no appeal is taken during the time permitted in the Assessment Law, the assessment "becomes binding and conclusive [and] constitutes a limitation on subject matter jurisdiction." School District's Brief at 15-16 (*citing Lincoln*, 758 A.2d at 1190) (citation omitted).

While School District concedes the assessment Notices lacked the requisite mailing date, it disputes the Commonwealth Court's characterization of the Notices as **defective**. *See* School District's Brief at 22. Rather, it emphasizes "the Notices included the exact date certain deadline for filing the appeal — July 17, 2017." *Id.* (emphasis omitted). School District also observes "the mailing date is inconsequential … to the … filing [of] an annual appeal by August 1st of any year." *Id.* Further, it highlights that although Charter School admits it received a "Reminder Notice" for each invoice in November 2017, Charter School waited seven months to file an annual appeal with the Board, and in that appeal, did **not** seek a refund of the 2017 taxes it already paid. *See id.* at 17-18 (claiming Charter School's payment without protest was "acknowledging the taxability of the Propert[ies] for those prior tax years"). Nor did Charter School appeal the Board's decision to grant the exemption **effective January 1, 2019**. *See id.* at 18. Thus, School District maintains Charter School failed to exhaust its statutory remedies.

Second, even assuming the Notices were defective, School District maintains the Commonwealth Court had no basis to grant *nunc pro tunc* relief when Charter School "failed to diligently exercise its statutory rights" and, in fact, never requested *nunc pro tunc* relief. School District's Brief at 24, 28.

Relying on *Appeal of York & Foster*, School District first asserts that Charter School waived its right to challenge the assessment Notices when it paid the 2017 and 2018 taxes without protest. *See* School District's Brief at 24-26 (*citing Appeal of York & Foster*,

63 A.2d at 359). In addition, School District contends the Commonwealth Court's ruling conflicts with its decision in *Atlantic City Elec. Co. v. United School District*, 780 A.2d 766 (Pa. Cmwlth. 2001). In that case, the Court recognized that "allegations of inadequate notice [of a tax assessment change] are not properly made against [a school district], which was the only party named as a defendant." *Atlantic City Elec. Co.*, 780 A.2d at 772. The Court observed that the school district had **no authority** over the assessment process. *See id.* Therefore, School District argues that it, likewise, should not be "penaliz[ed] for errors on notices over which it had no control[.]" School District's Brief at 27.

School District also emphasizes the Commonwealth Court granted relief that was not requested by Charter School. *See* School District's Brief at 28. It maintains Charter School failed to diligently pursue an appeal of the assessment changes and proclaims that if we permit these types of *nunc pro tunc* challenges, "[t]axing authorities would need to second-guess their tax rolls for fear of being open to challenge for taxes long since paid." *Id.* at 28-29.

Conversely, Charter School argues there was "no legal basis" to reassess the Properties as taxable after it purchased them from PSU, noting School District itself concedes the Properties "would technically qualify as [tax] exempt." Charter School's Brief at 10 (*citing* School District's Brief at 27). Simply put, Charter School claims School District was "not 'entitled' to the taxes that were paid[,]" and for this reason, Charter School was not required to file an appeal before the Board; rather, it should have been permitted to seek a refund of the taxes improperly assessed under the Tax Refund Law. *Id.* at 13.

Accordingly, it urges this Court to affirm the Commonwealth Court's decision on this (alternative) basis.[10]

In support, Charter School declares that its Properties are "presumed to be exempt and immune from local taxation" under both statutory and common law. Charter School's Brief at 14. It explains that approved charter schools are part of the public school system and, like public schools, are tax exempt. *See id.* at 14-15. *See also* 24 P.S. § 17-1722-A(e)(1) (property owned by an approved charter school "shall be made exempt from every kind of … real estate tax"). However, Charter School takes this statutory exemption one step further by asserting that the language of the Charter School Law "establishes a '**self-executing**' **presumption of tax immunity** for charter school property." Charter School's Brief at 16 (emphasis added). Citing the "long recognized" presumption of tax immunity for "public property held for public purposes," Charter School insists that this presumption has been applied "to almost every type of public entity, including … public schools." *Id.* at 17-18 (citing cases). Further, it maintains the purpose of the presumption is to prevent what occurred here: "School District levied and collected a tax on itself." *Id.* at 19. Although Charter School recognizes the cases cited by School District which place the burden on the taxpayer to "establish eligibility for a statutory tax exemption[,]" it retorts that those cases "simply do not apply in the context of public property." *Id.* at 20 (citation omitted).

Therefore, Charter School asserts the burden was on the "taxing authority" to demonstrate that Charter School's property was taxable. *See* Charter School's Brief at 22-23. Here, Charter School insists School District was "fully aware" the Properties were

---

[10] "It is well settled that this Court may affirm the decision of the immediate lower court on any basis, without regard to the basis on which the court below relied." *Shearer v. Naftzinger*, 747 A.2d 859, 861 (Pa. 2000) (citations omitted).

being used by Charter School and had "no basis" to levy taxes for the 2017 and 2018 tax years. *Id.* at 23-24 (citations and internal quotation marks omitted). Rather, it argues "the Propert[ies have] been exempt from taxation by operation of law from the moment Charter School acquired" them, "notwithstanding the actions of the County or any failure by … Charter School to challenge the redesignation of the Propert[ies] as taxable or otherwise establish that [they were] exempt." *Id.* at 25, 28. For these reasons, Charter School maintains it is entitled to seek a refund under the Tax Refund Law.

Nevertheless, even if we conclude it is not entitled to relief under the Tax Refund Law, Charter School maintains we should affirm the ruling of the Commonwealth Court granting *nunc pro tunc* relief. *See* Charter School's Brief at 29. Charter School emphasizes the plain language of the Assessment Law affords an aggrieved taxpayer the right to a hearing "upon proof of defective notice[.]" *Id.* at 30 (*citing* 53 Pa.C.S. § 8845). Because the assessment Notices at issue here were missing the requisite date of mailing, Charter School asserts the Commonwealth Court properly granted *nunc pro tunc* relief. *Id.* at 32-33 (stating *nunc pro tunc* relief is warranted when there is "a breakdown in the administrative process or negligence by the administrative agency" or when it is necessary "in order to prevent injustice") (citations and internal quotation marks omitted).

Although it did file an annual appeal in 2018, Charter School claims it never saw the defective Notices prior to the initiation of this lawsuit. *See* Charter School's Brief at 34-35. Therefore, it contends the issue concerning "whether it was proper for … School District to assess taxes against th[ese] clearly exempt Propert[ies] in 2017 and 2018" was not before the Board during the 2018 annual appeal. *Id.* at 36. Moreover, it declares that *nunc pro tunc* relief is warranted "to prevent the injustice of allowing … School District to charge and collect taxes on exempt public school property for two full years due purely to a procedural error." *Id.* at 37. Charter School relies upon *In re: Borough of Riegelsville*,

979 A.2d 399 (Pa. Cmwlth. 2009), in which the Commonwealth Court granted the Borough's request to appeal *nunc pro tunc* from an assessment change of borough-owned property from tax exempt to taxable status after the appeal period expired. *See* Charter School's Brief at 37-38. It repeats that School District was "fully aware that it was levying and collecting taxes on property that is statutorily exempt from taxation" and should be prohibited, in the future, from "sending tax bills to public entities for properties that have not been judicially established as being taxable." *Id.* at 40-41. Accordingly, Charter School requests this Court affirm the Commonwealth Court's decision on either of these alternative grounds. *See id.* at 42.

## V. Discussion

Charter School's arguments are premised upon two core fallacies: (1) property owned by charter schools is "presumed to be **exempt and immune** from local taxation," and (2) as a result, Charter School had no obligation to prove its property was entitled to a tax exemption. Charter School's Brief at 14-17 (emphasis added). However, it ignores the important distinction between tax immunity and a tax exemption. *See SEPTA*, 833 A.2d at 713. While property owned by the Commonwealth and its agencies is presumed to be **immune** from taxation — such that taxing bodies have no "statutory authority to levy a tax" against that property[11] — property owned and used by public schools and approved charter schools for public purposes is **exempt** from taxation.[12] *See* 53 Pa.C.S.

___

[11] *SEPTA*, 833 A.2d at 713.

[12] Charter School relies upon a series of distinguishable cases to support its assertion that public school property is entitled to a presumption of tax **immunity**. *See* Charter School's Brief at 17-18. The majority of those decisions, however, involve property owned by the Commonwealth and its agencies, as opposed to public or charter school property. *See Lehigh-Northampton Airport Auth. v. Lehigh Cnty. Bd. of Assessment* Appeals, 889 A.2d 1168, 1171, 1178 (Pa. 2005) (airport authority formed under Municipality Authorities (continued…)

§ 8812(a)(5); 24 P.S. § 17-1722-A(e)(1). Thus, a taxing body has the statutory authority and obligation to impose a tax on all property, and the burden is on the taxpayer to "establish that the property is **exempt** from taxation." *SEPTA*, 833 A.2d at 713 (emphasis added). Contrary to Charter School's claim, tax exemptions are **not** self-executing.

In an effort to divert attention from its own lack of diligence, Charter School declares School District had "no basis" to levy taxes for the 2017 and 2018 tax years because, as grantor of the charter, School District was "fully aware" that an approved charter school was operating on the Properties. *See* Charter School's Brief at 23-24 (citations and internal quotation marks omitted). What Charter School fails to acknowledge, however, is that School District had no involvement in the reassessment process. Rather, the **county assessment office** has the authority to revise property

---

Act entitled to presumption of tax immunity); *Indiana University of Pennsylvania v. Jefferson Cnty. Bd. of Assessment Appeals*, 243 A.3d 745, 754 (Pa. Cmwlth. 2020) (university-owned property, "effectively under the control of the Commonwealth government[,]" entitled to tax immunity); *Reading Housing Auth. v. Bd. of Assessment Appeals*, 103 A.3d 869, 870-871 (Pa. Cmwlth. 2014) (municipally owned mixed-use housing project immune from real estate tax); *Granville Tp. v. Bd. of Assessment Appeals*, 900 A.2d 1012, 1013, 1016 (Pa Cmwlth. 2006) (township-owned property to be used as a sewage treatment plant entitled to tax immunity).

The only case Charter School cites concerning property owned by a school district — *Wellsboro Area School District v. Tioga Cnty. Bd. for the Assessment & Revision of Taxes*, 651 A.2d 592 (Pa. Cmwlth. 1994) — considered the **tax exempt** status of school district property adjoining and annexed to a high school. *Id.* at 593. The issue before the Commonwealth Court was "what, if anything, a School District was required to prove, so as to qualify for an exemption under [the Assessment Law], once it established that the subject land [was] annexed to a schoolhouse." *Id.* at 595. The Court held that "once the School District … **demonstrated that it own[ed] the land and that the land [was] annexed to a school**," it was entitled to a presumption that the land was tax exempt. *Id.* (emphasis added). Charter School ignores the preliminary language of the holding, requiring the taxpayer (in that case, the school district) to first demonstrate that it owns the land in question before it is entitled to a presumption that the land is tax exempt. That is precisely what Charter School failed to do here.

assessments at any time so long as it provides proper notice.[13]  *See* 53 Pa.C.S. § 8841(c). Here, when PSU sold its tax exempt properties to a new owner, which was not the Commonwealth nor its agencies, the county assessment office was authorized to change the assessment from tax exempt to taxable, unless and until the new owner established the properties were entitled to a tax exemption. Charter School provides no authority for its assertion that the county assessment office should have **presumed** the Properties – by virtue of the new owner's name, "Circle of Seasons Charter School"[14] – were entitled to tax exempt status.[15]  Accordingly, to the extent Charter School insists it was not required to demonstrate that its Properties were entitled to a tax exemption, it is simply incorrect.

The Commonwealth Court, however, did not focus on whether Charter School was required to demonstrate the Properties' tax exempt status.[16]  Instead, the Court was troubled by the omission of the mailing date on the county's assessment change Notices. *See Circle of Seasons*, 273 A.3d at 30-31.  Citing Section 8844(b) of the Assessment Law, the Commonwealth Court explained that the date the notice is mailed is "essential" for a taxpayer to calculate the 40-day period in which to file an assessment appeal.  *Id.*

---

[13] Further, as discussed *infra*, Charter School also dismisses the critical fact that the county assessment office — not School District — prepared and mailed the purportedly defective Notices.

[14] Complaint, Exhibit A, Deed at 1.

[15] As School District observes in its reply brief, the mere fact that the new owner called itself a charter school was not sufficient to demonstrate the right to a property tax exemption under the Charter School Law.  *See* School District's Reply Brief at 3 (reasoning that "a charter school could presumably own property **before** they obtain their charter or **after** their charter is revoked, and in those instances the[ property] would absolutely not be entitled to [an] exemption") (emphasis in original).

[16] In fact, the Commonwealth Court's decision to provide Charter School with a *nunc pro tunc* hearing confirms that it recognized Charter School had the burden to establish the Properties' eligibility for tax exempt status before the Board.

at 30 (citation omitted). Because Section 8845 grants an aggrieved party the right to a hearing before the Board "upon proof of defective notice," the Commonwealth Court concluded that Charter School was entitled to a hearing in this matter. *Id.* (*citing* 53 Pa.C.S. § 8845).

The Commonwealth Court's decision is misguided. First, Charter School concedes it was aware of the change in assessment in November 2017, when it received the School District's reminder invoices. However, rather than question the revised assessments, it waited seven months and then paid the delinquent taxes during its refinancing of the Properties. Only after that — in the summer of 2018 — did Charter School file an annual appeal challenging the change in assessment.

Second, when Charter School did file the annual appeal, it did **not** seek retroactive application of the Properties' tax exempt status, a redesignation of the 2017 and 2018 assessment status, request a refund of the 2017 taxes paid, or seek a discharge of the 2018 tax invoices. Indeed, after the Board issued its decision, and granted the Properties tax exempt status **effective January 1, 2019**, Charter School paid School District's invoice for the 2018 tax year. It did not appeal the Board's ruling.

The purpose of a Section 8845 appeal is to provide the aggrieved party (here Charter School) with "the right to a hearing before the [B]oard." 53 Pa.C.S. § 8845. Charter School received that hearing, and a favorable decision, in the fall of 2018. While it may not have been aware of the "defect" in the Notices at that time,[17] Charter School had a full opportunity to challenge the reassessments of the Properties before the Board.

---

[17] Charter School claims it was "completely unaware of the existence of the Notices until … School District presented copies of those Notices as attachments to the affidavits submitted in support of … School District's [p]reliminary [o]bjections." Charter School's Brief at 34-35. Regardless, this does not change the fact that Charter School received real estate tax invoices from School District in November 2017, at which time it had actual notice that the county reassessed the Properties as taxable.

Thus, we disagree with the Commonwealth Court's determination that, under the circumstances presented here, Charter School is entitled to **another hearing** simply because the mailing date was omitted from the assessment change Notices. For this reason, we also conclude the Commonwealth Court erred when it granted Charter School *nunc pro tunc* relief — relief it never requested, on a claim it waived.

*Nunc pro tunc* relief is reserved for "extraordinary circumstances[,]" such as when a party misses an appeal deadline due to "fraud or a breakdown in the court's operations through a default of its officers." *Union Elec. Corp. v. Bd. of Property Assessment*, 746 A.2d 581, 584 (Pa. 2000) (citations and internal quotation marks omitted). In *Union Elec. Corp.*, we applied this same reasoning when a party filed an untimely appeal from an administrative board's decision. There, the county assessment board issued an order purporting to extend the time for filing tax assessment appeals. *See id.* at 582. Relying on that order, the aggrieved taxpayers filed appeals during the extended period. *See id.* In later appeals to the trial court and the Commonwealth Court, the taxing authority filed motions to quash, as untimely, the initial appeals to the board. *See id.* at 583. Both lower courts quashed the appeals, finding that the Board had no "legal or statutory basis to extend the filing deadline," and denied the taxpayers' requests for *nunc pro tunc* relief. *Id.* This Court reversed, concluding the aggrieved taxpayers were entitled to appeal their tax assessments *nunc pro tunc* because they "reasonably relied" on the assessment board's apparent authority to extend the appeal filing deadline. *Id.* at 584. We held "where an administrative board or body is negligent, acts improperly or unintentionally misleads a party … an appeal *nunc pro tunc* may be warranted." *Id.*

Here, the Commonwealth Court opined the county's failure to include the mailing date on the Notices "established the negligence that warrants a *nunc pro tunc* appeal before the … Board on whether the County properly revised the tax status of Charter

School's properties on June 5, 2017." *Circle of Seasons*, 273 A.3d at 32. As mentioned above, it directed the trial court, upon remand, to transfer the matter to the Board to decide "whether the County's assessment notices of June 5, 2017, were valid, whether Charter School's properties are taxable, and whether Charter School is entitled to a refund from the School District." *Id.* at 33.

However, as explained *supra*, Charter School **did** have the opportunity to challenge the assessment changes in its 2018 annual appeal — and the Board granted the Properties full tax exempt status. At that time, Charter School had already paid the tax bill for the 2017 tax year and received an invoice for the 2018 tax year — which it later paid **after** the Board granted the tax exemptions. Charter School offers no reason why it did not (or could not) seek a refund of the 2017 taxes paid or request discharge of the outstanding 2018 invoices in the 2018 appeal before the Board. In fact, the Board explicitly granted "total tax exemption" on the Properties "**effective January 1, 2019**." Board Decision Notice, 10/31/2018. Charter School could have appealed the effective date of that ruling to the Commonwealth Court, but inexplicably, did not do so. Instead, it paid the 2018 tax year invoice in full without dispute, and then waited six more months before requesting a refund of the 2017 and 2018 taxes paid. Accordingly, because Charter School was already afforded a full hearing to challenge the change in assessments and waived any objection to its payment of the 2017 and 2018 taxes, the Commonwealth Court abused its discretion when it granted Charter School *nunc pro tunc* relief.

## VI. Conclusion

When tax exempt property is sold, the county assessment office has the authority to reassess the property as taxable. The new owner bears the burden to establish the

property is entitled to tax exemption status. Moreover, when a taxpayer challenges an assessment in an appeal to the Board, the taxpayer must raise any and all claims regarding the change in assessment — including the effective date of a tax exemption and a request for a refund of taxes already paid pursuant to the (incorrect) assessment — or suffer waiver. Because Charter School did not request the Board refund the taxes it paid before the Properties were granted tax exempt status, or challenge the effective date of that exemption, it is not entitled to revisit these waived claims in a *nunc pro tunc* appeal. We cannot sanction giving a party a proverbial "second bite of the apple" when it neglects to diligently pursue relief the first time.

For these reasons, we reverse the order of the Commonwealth Court, and reinstate the order of the trial court.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Brobson join the opinion.

Justice Mundy files a concurring opinion.